Good morning, may it please the court. My name is Robert Ramsey and I am the attorney for the appellant in this case. This is an appeal brought after a guilty plea whereby it was a conditional plea and the defendant preserved his right to appeal the denial of the motion to suppress. So the issue involved in that matter is whether or not the district court erred in denying the defendant's motion to suppress evidence. The second issue is a sentencing issue and it deals with whether or not the court erred by applying a two-level enhancement to the defendant's offense level. With respect to the first issue, I think it's a very narrow issue and it deals with whether or not the search warrant in the case allowed the seizure of the guns which the firearms, rather, which the defendant eventually pled guilty to. Let's assume that the warrant did not cover firearms. The firearms were seen in plain view and the officers executing the warrant were aware that your client was a felon. So why wouldn't that be evidence of a felony in plain view and not specifically covered in the warrant? Well, Your Honor, I believe in this case there is a question as to whether or not the items in that particular residence belonged to the defendant. That's a different point from whether they were obvious and therefore could be seized. Well, obvious as to the defendant. The defendant was the individual who had been convicted of a felony, not the other occupants of the house. So I think the court's question to me was, knowing that the defendant was a felon, did that, did not that make the firearms contraband? Well, I'm saying to the court in the answer that... Well, wasn't there a probable cause to believe so? In other words, it may have turned out later that one of the firearms might have belonged to a friend or something like that, but did they need to know for an absolute certainty to make that a permissible seizure? Well... Or it wasn't probable cause to believe that it was contraband enough? Well, I don't think that they had to believe for an absolute certainty. The problem is, is that they knew for a certainty that the house did not belong to Mr. Tate. They knew that the house belonged to someone else. And they also were told when they approached the premises that the individual who answered the door for them had control of the premises at that time. So even though I don't know that specifically in another context they had to absolutely know that the guns did not belong to him, I think in this context where those guns were not described in the warrant itself, I think it makes a difference. knowing what they knew, that is, that the defendant did not have sole control of those premises. Did they know whether he had access to the premises? Oh, I think they knew he had access to the premises. I think there was evidence that they had seen him going in and out of the premises. So, yes, that's true. I mean, I think the only thing here is that, look, the government says, well, everyone knows that if you deal drugs, you have firearms. Why didn't they put it down? I mean, I don't think they should be, they meaning the officers, should always be saved by the court. They could have easily put down on the search warrant what it is they wanted to seize. So I think that the fact that they knew that, in fact, the defendant was not the owner of the residence. They had observed him going to three or four different residences. They had made undercover purchases from him. As a matter of fact, they did not make any reference to him selling drugs out of that particular place. They knew the places where, that he used to sell drugs. They saw him going to this place, this residence that was searched on different occasions. So to answer your question directly, though, they knew, yes, they did have probable cause, that they knew that he did have access to that residence. But I don't believe, again, that that solves the problem here. And again, it just seems to me due process requires that if, in fact, the agents wanted to seize those guns, they should have alleged those guns. And I do not believe in a situation where the ownership or the control of the guns and the ownership of the premises is to an individual other than the individual that's visiting a preclusive residence. There's a difference as to whether or not you can say that if you own the conveyance of the residence, then you likely own or possess the firearms. I think there's a tremendous difference here. With respect to the second issue, I would like to reserve some time for my rebuttal. With respect to the second issue, the second issue is a sentencing issue. And again, we have a situation whereby the court finds that the defendants, sentencing should be enhanced by two levels because of what the court calls relevant conduct, and that is the ownership of three, possession of the three additional guns. And again, it's a segue into the argument when we have a situation where the individual does not own the residence, where the firearms are found. The problem, of course, is how can it be clear error when he himself said he would own up to them? Well, Your Honor, I think, number one, that was in the context of when he was first arrested. He said, if it helps and if you let my girlfriend go and don't charge her, then I will take ownership of those other three. He never did. As a matter of fact... Did she say that they were his, though? Well, yes, she said they were. Repair error if one of the people involved says that the guns were his. Well, he didn't say they were his. He admitted to two of the firearms. I thought the girlfriend said they were his. Well, she did, but the question becomes whether or not she's believable. I mean, that's the whole issue here. But that's the question for us. If the trial court found her believable, why is it for us to overturn that? Well, because I contend that the trial court's finding was not supported by the evidence and that he should not, he could not find that based upon the factors that were present. I mean, this Court has held that if you make a finding, there should be some type of evidence here, and it should be reliable. The co-defendant in this woman, although she was not indicted as a co-defendant, she did plead guilty to being in possession of a firearm. And I think she pled guilty to being in possession of one firearm with symptoms on that basis. So she had a reason to lie about who the firearms belonged to. And the trial court knew that and believed her anyway, so why shouldn't we say that that's a permissible finding? Well, I don't know that it is. I'm contending that it's not a permissible finding under the facts of this case, Your Honor. Ms. James, do you want to save your remaining time? I would, Your Honor. Thank you. Mr. Raphael. May it please the Court. Michael Raphael on behalf of the United States. Your Honor, in this case, the guns were properly seized and properly considered at sentencing. As to the seizure issue, there are two reasons why this is true. The officers were properly executing a valid warrant. There's no challenge to that, and the warrant was to conspiracy. The first reason why it was valid to seize the guns, which were in plain view, is because under this Court's case law, the guns are seizable as evidence of the cocaine conspiracy. And that's the Simpson case that we cite in our briefs, where this Court said that because of the close connection between firearms and narcotics, that even where an affidavit only seeks evidence of a drug conspiracy, in Simpson it was drug-related evidence. Guns may be seized in order to gather evidence that would prove that conspiracy. Here, the warrant allowed a search for, quote, articles of personal property tending to establish a conspiracy to sell cocaine. And that is at least as good as the Simpson case that we cite in our briefs. Separately from that argument is the argument that was touched on in the previous colloquy with defense counsel, which is that the guns in this particular case were evidence of a separate substantive offense. Based on what the officers knew about defendant's criminal history, he had seven prior felonies. The guns were evidence of felony possession. What is your response to opposing counsel's argument, though, that even though he had access to the house, it wasn't his house, so why would they have probable cause to believe that the firearms were his instead of the homeowners? They had very solid evidence, even at the time of the search. Besides what they had in the affidavit, which has seen him go in now the house, and with his paperwork in the lockbox was some raw cocaine. And not only was defendant's paperwork found in the lockbox, but also elsewhere in the bedroom. Check reorder forms with defendant's name and that address were found. Defendant has some control over the bedroom. Plus, during the course of that search, probably towards the end of it, but certainly during the course of the search as a whole, the officers interviewed the girlfriend, McCoy's daughter, who told them that she saw the defendant bring the two rifles into the house. So that's before the seizure? It's during the course of the whole search. If one interprets the seizure to be at the very end of the entire process, then yes, it's before the seizure. Pretty much it's within the whole course of conduct, because it's not detailed in the record when it is that they spoke to the girlfriend and when it is they spoke to her daughter, but sometime during that whole time, the daughter told them that she saw the defendant bring the two rifles in. So all that occurred. Now, much later, of course, in his declaration in support of his motion to suppress, he admitted that he shared the house with his girlfriend. In his plea agreement, he admitted that and that he frequented the house. So that's later on, but even at the time of the search, there's all that evidence that he has some control of it. There's rock cocaine found in his car outside of the home and in that lockbox with his paperwork. So that all is pretty good evidence that there's some reason, at least for probable cause, to believe the defendant is the owner of the firearms, even at the time of the search. As to the sentencing issue, only three firearms are necessary for the enhancement, the two-level enhancement that was applied here. The defendant admitted to two firearms, the two rifles that the daughter told the officers that she saw him bring into the house. The district court at the first sentencing hearing relied on all the circumstances of how the guns were found, which presumably is the fact that he admitted to two guns and were found in that very same bedroom. At a second sentencing hearing, 6 of the excerpts of record, the court stated that it was specifically relying on the interview of defendant after the search. And that is where defendant at first denied ownership of any of the five guns. Then when he was told that the daughter saw him bring two rifles into the home, he admitted ownership of those two rifles. And subsequently he also offered to admit ownership of all five guns if the government did not charge the girlfriend. The district court specifically cited that and said that that, presumably plus the circumstances, which it had already mentioned, was enough to support the enhancement, which of course only has to be by preponderance of the evidence. And as this court noted before, now the review is for clear error. So the court wasn't even getting into any sort of credibility battle between defendant, who chose not to testify at the sentencing hearing, between defendant and the girlfriend. All we know about what the girlfriend would say is that the girlfriend said at the time of the search that all five guns were defendants. So there's no reason to think that she would say otherwise. However, reading what the court said, the court didn't even get that far to rely on that. The court said, based on the circumstances and based on what defendant said during his interview, that that's enough to support the enhancement. If the court has no more questions, I will submit. I don't think so. Thank you, Your Honor. Mr. Ramsey. Your Honors, pardon me. Again, with respect to the court's finding, and I'm specifically dealing with the finding of the issue, I believe, and I heard the government mention clear error, plain error. The issue, I believe, is whether or not the evidence was sufficient for the court to make the finding. I don't believe that the evidence was there. The court relied upon papers. And again, we make it clear that the information was given. It was not under oath. It was taken from interviews. And it was hearsay. And the question becomes whether or not that hearsay is reliable. And I suggest to the court that it is not reliable. And we – in our brief, we try and set out cases, at least one or two, that indicate why that type of evidence should not be relied upon. With respect to clear error, because the defendant, trial counsel, did not object, I believe that if the court finds – the defendant, in this case, was prejudiced by that finding. So if the court is going to find that he waived his right to have a hearing, then we would ask the court to find that it was clear error in waiving that right. Thank you. Thank you, Counsel. Mr. Ramsey, Mr. Raffaello, the matter just argued will be submitted. And we'll hear next Galvez v. Ashcroft.
judges: Browning, Rymer, Graber